IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FLAT CREEK TRANSPORTATION, LLC, *an Alabama limited liability company*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:16-CV-876 (WO) |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, ELAINE L. CHAO,[1] in her capacity as Secretary of the United States Department of Transportation, and KENNY PRICE, in his capacity as Alabama Division Administrator (Federal Motor Carrier Safety Administration), | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion to dismiss (Doc. # 19) filed by Defendants

Federal Motor Safety Administration ("FMCSA"), Elaine L. Chao, and Kenny Price.

Also before the court is Defendants' motion (Doc. # 42) to substitute their reply brief

and Plaintiff's motion (Doc. # 44) for leave to file a rebuttal to Defendants' proposed

reply brief. Upon consideration of the motions, the court concludes that the motion

to dismiss is due to be granted, and the remaining motions are due to be denied as

---

[1] Elaine L. Chao succeeded Anthony R. Foxx as Secretary of the United States Department of Transportation. Therefore, Elaine L. Chao is automatically substituted for Anthony R. Foxx by operation of Rule 25(d) of the Federal Rules of Civil Procedure.

moot.

# I.   STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co*., 31 F.3d 1092, 1095 (11th Cir. 1994).  This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Therefore, a federal court is obligated to inquire into subject matter jurisdiction sua sponte "at the earliest possible stage in the proceedings."  *Id*. at 410.  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377.

Plaintiff's Rule 12(b)(1) motion to dismiss for lack of jurisdiction presents a "facial attack" on the existence of subject matter jurisdiction.  A "facial attack" on the complaint "require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  In contrast, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and

matters outside the pleadings, such as testimony and affidavits, are considered." *Id*.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Generally, in accordance with § 1331, "[w]hen a plaintiff makes a plausible argument that a federal statute creates his right to relief, the district court has subject-matter jurisdiction over that complaint." *Lanfear v. Home Depot, Inc*., 536 F.3d 1217, 1221 (11th Cir. 2008). However, when a more specific statute vests original jurisdiction in a different court, the more specific statute will control. *See Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010) ("Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts.").

## II.    FACTS[2]

### A.    Regulatory Context

By law, the Secretary of Transportation must "prescribe minimum safety standards for commercial motor vehicles" and determine whether individual owners and operators are "fit to operate safely commercial motor vehicles." 49 U.S.C. §§ 31136(a), 31144(a)(1). The Secretary's assessment of owner-operator safety is to take into consideration an owner or operator's accident record and the accident and

---

[2] For purposes of the motion to dismiss for lack of jurisdiction, the court assumes that the factual allegations of the complaint are true. *Lawrence*, 919 F.2d at 1529. Outside the allegations of the complaint, the only potentially determinative jurisdictional fact is that, as a result of the compliance review at issue in this case, Plaintiff ultimately received a "satisfactory" safety rating after the conclusion of the on-site review. That fact is undisputed, although the parties dispute the legal ramifications that favorable conclusion of the on-site compliance review may have on the existence of jurisdiction.

safety inspection records of the owner or operator. *Id*. § 31144(a)(1). The Secretary is required to periodically update the safety fitness determinations. *Id*.

The Secretary's authority to implement these safety standards is delegated to FMCSA, an agency within the Department of Transportation. 49 C.F.R. §§ 1.86(a), 1.87(f). FMCSA, in turn, has promulgated regulations governing its procedures for "determin[ing] the safety fitness of motor carriers [and] assign[ing] safety ratings." 49 C.F.R. § 385.1 (a). Pursuant to those regulations, FMCSA conducts on-site compliance reviews of motor carrier's operations and rates each carrier as "satisfactory," "conditional," or "unsatisfactory." *Id*. §§ 385.3, 385.9. Carriers with "unsatisfactory" ratings receive an order from FMCSA prohibiting them from operating. *Id.* § 385.13. That order is commonly called an operation out-of-service ("OOS") order. (Doc. # 1 at ¶26.)

In 2010, FMCSA adopted the Carrier Safety Measurement System ("CSMS") by which FMCSA uses carrier performance data to score carriers' safety performance risk. *See Withdrawal of Proposed Improvements to the Motor Carrier Safety Status Measurement System (SafeStat) and Implementation of a New Carrier Safety Measurement System (CSMS)*, 75 Fed. Reg. 18,256-02 (Apr. 9, 2010). The data used in the CSMS system comes from "a variety of sources," including the Motor Carrier Management Information System ("MCMIS"). *Silverado Stages, Inc., v. FMCSA*, 809 F.3d 1268, 1271 (D.C. Cir. 2016). "To maintain the accuracy of the information displayed within the SMS, FMCSA has created DataQs, 'a web-

based dispute resolution [system] that allows an individual to challenge data maintained by FMCSA.'" *Id.* (quoting *Weaver v. FMCSA*, 744 F.3d 142, 143 (D.C. Cir. 2014)).

For each carrier, FMCSA uses CSMS to calculate a safety risk score derived in part from a percentile ranking (as measured against a safety-event group of comparable carriers[3]) in seven categories[4] called Behavior Analysis Safety Improvement Categories ("BASICs"). (Doc. # 1 at ¶ 38.) FMCSA "uses [the safety risk] scores generated by the [CSMS] to identify [and prioritize] high-risk carriers for on-site compliance reviews and other enforcement interventions, but these scores do not affect a carrier's safety-fitness ratings." *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. DOT*, 831 F.3d 961, 964 (8th Cir. 2016).

## B.  **Plaintiff's Claims**

Plaintiff is a commercial motor carrier that primarily transports refrigerated foods and does not transport hazardous materials. (Doc. # 1 at ¶ 16.) Plaintiff operates in interstate commerce and is subject to FMCSA's regulations and

---

[3] Carriers are placed into safety-event groups based on two factors: (1) "whether the carrier is in the straight-truck or combination-truck segment" and (2) "how many accidents the carrier has sustained over the previous twenty-four months." *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transportation*, 831 F.3d 961, 964 (8th Cir. 2016). "A straight truck has all of its axles attached to a single frame, while a combination . . . truck consists of two or more frames joined by couplings. A carrier is placed in the combination-truck segment  if combination trucks constitute at least 70% of its fleet and in the straight-truck segment if more than 30% of its trucks are straight trucks." *Id.* at 964–65.

[4] The seven categories are unsafe driving, hours of service compliance, driver fitness, drug or alcohol violations, vehicle maintenance, hazardous-materials handling (if applicable), and crash history.  (Doc. # 1 at ¶ 38.)

procedures for assigning safety ratings to motor carriers and, potentially, for prohibiting carriers that are deemed unsafe from operating on the nation's highways. Plaintiff seeks declaratory and injunctive relief from Defendants' alleged pattern of unlawfully targeting it for an unusually high number of compliance reviews with the intent of issuing an unwarranted OOS order that will place Plaintiff out of business. Specifically, Plaintiff alleges that Defendants inappropriately select it for compliance reviews based on (1) personal bias of certain FMCSA personnel against Plaintiff's owner and/or (2) flaws in the CSMS methodology that result in classifying Plaintiff as a "high-risk" carrier. (Doc. # 1 at ¶ 47.) According to Plaintiff, on-site compliance reviews and other investigations are burdensome and interfere with business operations.

## III. DISCUSSION

### A. Motions for Leave to File Additional Briefs

At the time Plaintiff filed its complaint, it anticipated that it would soon be unfairly targeted for an on-site compliance review and that FMCSA intended to use the compliance review to unfairly rate Plaintiff as "conditional" or "unsatisfactory." Plaintiff sought injunctive and declaratory relief from the anticipated compliance review, potential unfair safety rating, and possible OOS order.

After Plaintiff filed the complaint, FCMSA notified Plaintiff that it had been selected for a compliance review. Plaintiff moved for emergency and preliminary injunctive relief, including a request to stay the on-site compliance review pending

the outcome of this litigation.  (Doc. # 25.)  The court denied Plaintiff's requests for emergency injunctive relief on grounds that Plaintiff had not adequately demonstrated the existence of subject matter jurisdiction.  (Doc. # 29.)  After a hearing on the motion for preliminary injunction, the court denied the motion on grounds that the Hobbs Act,[5] 28 U.S.C. §§ 2341–2351, vests original jurisdiction in the courts of appeals to "enjoin, set aside, suspend . . . , or to determine the validity of" certain rules, regulations, and final orders of FMCSA.  28 U.S.C. § 2342.  The requested relief required review "of validity of Defendant FMCA's internal rules for identifying 'high risk' motor carriers which led to the selection of Plaintiff for a compliance review, or enjoining Defendant FMCA from issuing final enforcement orders against Plaintiff," which constituted rules or final orders subject to the Hobbs Act.  (Doc. # 30 at 1-2.)

As the parties were engaged in briefing on the motion to dismiss, the compliance review proceeded.  On April 21, 2017, Defendants submitted a reply brief in support of their motion to dismiss.  (Doc. # 41.)  On May 8, 2017, Defendants moved to substitute a different brief as their reply brief on grounds that, unbeknownst to Defense counsel, during the briefing period, the on-site compliance review had concluded with a "satisfactory" safety rating for Plaintiff.  (Doc. # 42.)

---

[5]  The Hobbs Act, 28 U.S.C. §§ 2341–2351, also known as the Administrative Orders Review Act or the Judicial Review Act, "governs the review of various administrative rules, regulations, and orders, and should not be confused with the [Hobbs] Act of the same name that criminalizes interstate robbery and extortion, 18 U.S.C. § 1951."  *Chhetri v. United States*, 823 F.3d 577, 582 n.3 (11th Cir. 2016).

Defendants attached their proposed substitute reply brief to their motion to dismiss, which contained a new argument that the "satisfactory" rating rendered Plaintiff's complaint moot.

Plaintiff does not dispute that the on-site compliance review resulted in a "satisfactory" rating, but filed a motion seeking leave to file a surreply to address the new mootness argument. (Doc. # 44.) Plaintiff also submitted a brief that addressed the merits of Defendants' proposed substitute reply brief. (Doc. # 43.) Plaintiff contended that the "satisfactory" rating in the recent compliance review did not ameliorate the basis of Plaintiff's complaint to the extent that Plaintiff allegedly remains "improperly and arbitrarily classified as 'high risk'" and thus subject to an increased likelihood of compliance reviews.[6]

The court has considered Defendant's proposed substitute reply brief and Plaintiff's brief in response. Accordingly, Defendants' motion (Doc. # 42) to substitute their reply brief and Plaintiff's motion (Doc. # 44) for leave to file a rebuttal are due to be denied as moot.

**B.    Mootness**

"A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Reich v. Occupational*

_____

[6] Plaintiff also took issue with the manner in which FMCSA carried out the investigation, despite the ultimate assignment of a "satisfactory" safety rating, but did not identify a concrete, particularized injury caused by the manner in which FMCSA carried out the investigation for which this court would have jurisdiction to grant relief.

*Safety & Health Review Comm.*, 102 F.3d 1200, 1201 (11th Cir. 1997) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  In considering whether a case is moot, the court must "look at the events at the present time, not at the time the complaint was filed."  *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).

For the reasons stated in the March 13, 2017 Order denying the motion for preliminary injunction (Doc. # 30), under the Hobbs Act, 28 U.S.C. § 2342, the court lacked jurisdiction to grant relief from the on-site compliance review or the resultant safety rating.  The conclusion of the on-site compliance review with a "satisfactory" rating does not negate the applicability of the Hobbs Act.  Therefore, as to any requested relief from that particular on-site compliance review or resultant safety rating, it is unnecessary to address Defendants' mootness argument.

In its complaint, Plaintiff seeks relief from alleged continuous imminent danger of unfair targeting for on-site compliance reviews and other enforcement action based on an unwarranted "high risk" safety rating and the subjective desire of FMCSA personnel to place Plaintiff out of business.[7]  The satisfactory conclusion of the on-site compliance review did not eliminate Plaintiff's "high risk" safety rating or the alleged nefarious intentions of FMCSA personnel.  Accordingly, *if*,

---

[7] Defendants did not direct their mootness arguments at Plaintiff's allegation that it remains in continuous danger of targeting for on-site compliance reviews due to a high-risk safety rating and FMCSA personnel bias.

outside the context of an imminent threat of a specific on-site compliance review, the court has jurisdiction to grant Plaintiff prospective relief from continuous danger of unfair investigatory targeting by FMCSA, the favorable conclusion of the on-site compliance review does not necessarily moot the availability of that relief.[8]  *Cf. Reich*, 102 F.3d at 1201 ("A claim for injunctive relief may become moot if: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979))); *cf. also Aulenback, Inc. v. Fed. Highway Admin*., 103 F.3d 156, 164-65 (D.C. Cir. 1997) (holding that, although carriers' challenges to particular OOS orders was mooted by the withdrawal of those orders, the controversy was not moot as to the carriers' challenge to the agency policy underlying the issuance of the OOS orders).

## C.    Claims Arising Solely Out of FMCSA Officer Bias

Plaintiff does not allege that, in the absence of a "high risk" CSMS safety score, FMCSA personnel bias against Plaintiff, standing alone, would lead to unfair targeting for investigations and safety reviews.  Plaintiff has not identified any particular imminent threat of FMCSA action based solely on FMCSA personnel bias

---

[8] However, for the reasons stated in Part III.C. and D. of this Memorandum Opinion, this court lacks jurisdiction to grant Plaintiff prospective relief from the danger of future unwarranted targeting for on-site compliance reviews.

in the absence of Plaintiff's "high risk" safety score.[9] Accordingly, any request for prospective relief arising from unidentified potential FMCSA action solely motivated by bias is not ripe for consideration. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations and internal quotation marks omitted)).

Further, in the absence of any identifiable imminent action on the part of FMSCA resulting solely from personnel bias, it is impossible to say whether this court would have jurisdiction to review or enjoin the action under the Hobbs Act, 28 U.S.C. § 2342, or the Administrative Procedures Act ("APA"), 5 U.S.C. 500, *et seq*. *See* 28 U.S.C. § 2342 (providing that the courts of appeals have original jurisdiction to "enjoin, set aside, suspend . . . , or to determine the validity of" certain rules, regulations, and final orders issued by the Secretary of Transportation); *Atlanta Gas Light Co. v. F.E.R.C.*, 140 F.3d 1392, 1404 (11th Cir. 1998) (holding that, to determine whether an APA claim is ripe for review, a court must "evaluate the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" by considering "four factors: (1) whether the issues presented are 'purely legal'; (2) whether the challenged agency action constitutes 'final agency

---

[9] Although not a basis for this Memorandum Opinion, the court notes that, at the preliminary injunction hearing, Plaintiff's expert testified that FMCSA personnel were biased against Plaintiff *because*, despite Plaintiff's high-risk CSMS safety score, Plaintiff continuously earned "satisfactory" safety ratings. (Doc. # 34 at 59-60.)

action'; (3) whether the administrative action has a 'direct and immediate' impact on the petitioner; and (4) whether judicial resolution of the claim will aid, rather than impede, effective administration by the agency" (citation and internal quotation marks omitted)).

Finally, even if the court could attempt to consider a request for relief from FMCSA bias in the absence of any identifiable imminent FMCSA action, the court could not fashion any meaningful relief apart from an impermissible "obey the law" injunction. *See Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (holding that an injunction to "obey the law," without specifically identifying the specific conduct that is prohibited, is not enforceable because it does not give fair notice to the restrained party of what conduct will risk contempt).

Accordingly, alleged FMCSA personnel desire to harass Plaintiff and put Plaintiff out of business, without more, does not create a justiciable issue.

## D.    Claims Arising out of Plaintiff's "High-Risk" CSMS Safety Score

Plaintiff contends that its "high risk" CSMS safety score (alone or used as an excuse for heightened scrutiny by biased FMCSA personnel) subjects it to an increased risk of targeting for enforcement and on-site compliance reviews. According to Plaintiff, being targeted for heightened regulatory inspections and on-site compliance reviews can, at best, unduly burden day-to-day business operations, and, at worst, end in an OOS order that, even if unjustified, will effectively put Plaintiff out of business before Plaintiff can obtain administrative and judicial

review of the OOS order.

Plaintiff contends that the "high risk" CSMS safety score is unjustified because the CSMS methodology used to arrive at the safety score is flawed. Specifically, Plaintiff argues that the CSMS methodology is erroneously overbroad in the types of accidents taken into account in calculating safety scores and that the safety score is inherently unfair because it rates carriers against their peer groups.[10]

The Hobbs Act, 28 U.S.C. § 2342, vests original jurisdiction in the court of appeals

> to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of the Secretary of Transportation issued … pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49.

28 U.S.C. § 2342(3)(A). Therefore, to determine whether the Hobbs Act vests original jurisdiction over Plaintiff's remaining claims in the Court of Appeals, thus depriving this court of subject matter jurisdiction, the court will consider two issues: (1) whether the adoption of the CSMS system is a "rule[], regulation[], or final order[] of the Secretary of Transportation . . . pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49;" and (2) whether Plaintiff's challenge to its "high risk" score necessarily implicates the

---

[10] Plaintiff contends that rating carriers against their peer groups is unfair because a carrier with a history of relatively few accidents and other violations in comparison with the industry as a whole may nevertheless be rated "high risk" because the carrier's CSMS percentile ranking is calculated in comparison against a peer group of carriers that have similarly low histories of accidents and other violations.

Hobbs Act by requiring review of the validity of the CSMS system.

### 1. *FMCSA's adoption of the CSMS system, and/or the CSMS system itself, is a "rule" within the scope of the Hobbs Act.*

The Hobbs Act does not define what constitutes a "rule." However, in construing the Hobbs Act, courts[11] have relied on the APA's definition of the term:

> "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency.

5 U.S.C. § 551(4).

In adopting the CSMS system, FMCSA stated that CSMS would be "a more comprehensive safety measurement system" used "to identify high-risk motor carriers for on-site investigations consistent with 4138 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), [Sec. 4138, Pub. L. 109-59, 119 Stat. 1745 (49 U.S.C. 31144 note), August 10, 2005]." 75 Fed. Reg. 18256-02, 18257. FMCSA's adoption of the CSMS system and/or the CSMS system itself is a rule because it is an "agency statement of general or particular applicability and future effect designed to implement . . . law or policy" or to "describ[e] the organization, procedure, or practice requirements of" FMCSA. 5 U.S.C. § 551(4).

---

[11] *See, e.g., Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 147-48 (D.C. Cir. 2014) (holding, in concluding that "FMCSA's action falls short of being a rule, regulation or final order within the meaning of 28 U.S.C. § 2342(3)," that the "alleged action was plainly not a rule— *i.e.*, a statement of 'general or particular applicability and future effect,' 5 U.S.C. § 551(4)").

Section 4138 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU) states: "From the funds authorized by section 31104(i) of [T]itle 49, United States Code, the Secretary shall ensure that compliance reviews are completed on motor carriers that have demonstrated through performance data that they pose the highest safety risk. At a minimum, a compliance review shall be conducted whenever a motor carrier is rated as category A or B for 2 consecutive months." Sec. 4138, Pub. L. 109-59, 119 Stat. 1745 (49 U.S.C. § 31144 note). Thus, FMCSA's implementation of the CSMS system and/or the CSMS system itself was a rule issued pursuant to FMCSA's obligation, under 49 U.S.C. § 31144, to "determine whether an owner or operator is fit to operate safely commercial motor vehicles" and "periodically update such safety fitness determinations." 49 U.S.C. § 31144(a). Section 31144 falls under "subchapter III of chapter 311 . . . of [T]itle 49" of the United States Code. 28 U.S.C. § 2342(3)(A). Therefore, the CSMS system, and/or the CSMS system itself, is a rule that falls within the scope of the Hobbs Act.[12]

### 2. Plaintiff's challenge to the CSMS system brings its claim for relief from its "high risk" rating within the scope of the Hobbs Act.

A plaintiff cannot evade the Hobbs Act by draping its claims in artful pleading designed to "disguise the donkey." *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453,

---

[12] The court notes that Pub. L. 109-59, pursuant to which FMCSA adopted the CSMS system, also added subchapter III of chapter 311, chapter 313, and chapter 315 of Title 49 to the scope of the Hobbs Act. Sec. 4125, Pub. L. 109-59, 119 Stat. 1745.

462 (11th Cir. 2012). The "'Hobbs Act jurisdictional analysis looks to the 'practical effect' of a proceeding, not the plaintiff's central purpose for bringing suit.'" *Chhetri v. United States*, 823 F.3d 577, 586 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 305 (2016) (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014)). A challenge to agency action that "touches on, but does not seek to invalidate, a [rule or] regulation" may not be subject to the Hobbs Act, depending on "whether the resolution of the claim can be considered 'wholly collateral' to the [rule or] regulation's validity or whether the two are 'inescapably intertwined.'" *Id.* However, the courts of appeals have exclusive jurisdiction over claims that "'depend on establishing that all or part' of an administrative [rule,] regulation or order 'subject to the Hobbs Act is "wrong as a matter of law" or is "otherwise invalid."'" *Id.* (quoting *Mais*, 768 F.3d 1120 (quoting in turn *Self*, 700 F.3d at 462)).

To evaluate Plaintiff's challenge to its "high risk" score or to the resultant risk of unfair prioritization for unnecessary and burdensome investigations, the court must consider Plaintiff's allegations that the CSMS system is inherently flawed, and/or that FMCSA violated its statutory duties in adopting the CSMS system. In other words, to prevail on Plaintiff's remaining claims, Plaintiff must establish that FMCSA rules subject to the Hobbs Act are "wrong as a matter of law" or "otherwise invalid." *Id.* (*See also* Doc. # 43 at 12 (arguing that the conclusion of the on-site compliance review and "satisfactory" safety rating did not moot Plaintiff's allegation that it remains subject to future unwarranted investigations on grounds that FMCSA

is "violating its statutory duty to ensure the accuracy of" CSMS data and "implementing its flawed regulatory scheme to improperly classify [Plaintiff] as high risk").)[13]

Accordingly, Plaintiff's remaining claims are encompassed by the Hobbs Act. Nevertheless, Plaintiff argues that original jurisdiction is appropriate in the district court because (1) the remaining claims are subject to the APA, and (2) the remaining claims do not concern an FMCSA "final order." The court will address these arguments in turn.

The APA provides that "[a] person suffering a legal wrong because of agency action . . . is entitled to judicial review." 5 U.S.C. § 703. As Plaintiff points out, in cases brought pursuant to the APA, subject matter jurisdiction is predicated on federal question jurisdiction under 28 U.S.C. § 1331.[14] Although Section 1331

---

[13] (*See also, e.g.*, Doc. # 1 at ¶ 30 (alleging that FMCSA's use of CSMS scores to prioritize carriers for compliance reviews violates 49 U.S.C. § 31144(b)(3) and regulations promulgated pursuant to § 31144); Doc. # 1 at ¶ 33 (arguing that FMCSA's use of CSMS violates a statutory duty under 49 U.S.C. § 31106(e)(1) to ensure that data is complete, timely, and accurate); Doc. # 1 at ¶ 34 (alleging that the accident database used for calculating CSMS scores is defective and that FMCSA's DataQs system for challenging FMCSA data errors is futile); Doc. # 1 at ¶ 37 (alleging that the CSMS system is flawed because it takes preventable and non-preventable accidents into consideration); Doc. # 1 at ¶ 40 (alleging that the CSMS system's algorithm for calculating percentile rankings is flawed because it ranks carriers relative to their peers); Doc. # 1 at ¶¶ 64, 66 (requesting declaratory and injunctive relief requiring FMCSA to ensure the accuracy of the CSMS system and the databases used in the CSMS system).)

[14] Plaintiff correctly points out that the APA acts as a waiver of sovereign immunity, but does not provide an independent basis for subject matter jurisdiction in the federal courts. Rather, subject matter jurisdiction is proper under the APA only in combination with federal question jurisdiction granted pursuant to 28 U.S.C. § 1331. *Choctaw Mfg. Co. v. United States*, 761 F.2d 609, 615 (11th Cir. 1985) (noting that the APA does not serve as an independent grant of subject matter jurisdiction); *Alonso-Escobar v. USCIS Field Office Dir. Miami, Fla.*, 462 F. App'x 933, 935 (11th Cir. 2012) (citing cases for the holding that "neither the APA nor the [Declaratory

provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331, it is well settled that "a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." *Inv. Co. Inst. v. Bd. of Governors of Fed. Reserve Sys.*, 551 F.2d 1270, 1279 (D.C. Cir. 1977). Further, the APA itself does not necessarily require actions to be originally brought in district court. 5 U.S.C. § 703 ("The form of proceeding for judicial review [under the APA] is the special statutory review proceeding relevant to the subject matter *in a court specified by statute* or, in the absence or inadequacy thereof, any applicable form of legal action . . . in a court of competent jurisdiction." (emphasis added)).

Thus, in light of the Hobbs Act's specific grant of jurisdiction to the courts of appeals, the existence of federal question jurisdiction over Plaintiff's APA claims does not control *which court* has original jurisdiction to hear the APA claims. When an APA claim falls within the scope of the Hobbs Act, the Court of Appeals has original jurisdiction to hear the claim. *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) ("While the Hobbs Act specifies the form of proceeding for judicial

---

Judgment Act] serves as an independent source of district court jurisdiction."). Plaintiff is *incorrect* in arguing that, because the APA does not *grant* subject matter jurisdiction, jurisdiction cannot be *restricted* by the APA's requirement that challenges to administrative action must be brought against "final" agency action. "[F]ederal jurisdiction is . . . lacking when the administrative action in question is not 'final' within the meaning of 5 U.S.C. § 704." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).

review of [Agency] orders, *see* 5 U.S.C. § 703, [the APA] codifies the nature and attributes of judicial review."); *Chetri*, 823 F.3d at 585 (holding that, "rather than bring an original action in the district court[,] . . . challenges to administrative regulations" that were "issued pursuant to . . . subchapter III of chapter 311" must, in accordance pursuant to the Hobbs Act, "generally . . . be brought before the courts of appeals pursuant to the [APA], 5 U.S.C. § 500 *et seq.*").

Plaintiff argues that, under *Weaver v. FMCSA*, 744 F.3d 142, 143 (D.C. Cir. 2014) and *Silverado Stages v. FMCSA*, 809 F.3d 1268, 1274 (D.C. Cir. 2016), its claims do not require review of a "final order" of FMCSA within the meaning of the Hobbs Act. (Doc. # 38 at 9-12.) In *Weaver* and *Silverado Stages*, the plaintiffs challenged FMCSA's refusal to correct specific inaccurate information in the MCMIS database FMCSA uses in the CSMS system to calculate safety risk.[15] In both cases, the Court of Appeals for the District of Columbia concluded that the challenges to FMCSA's refusal to correct particular safety violations were not challenges to final orders subject to the Hobbs Act.

*Weaver* and *Silverado Stages* are distinguishable because the final agency actions challenged in those cases were not "rules" or "regulations," and resolution

---

[15] *Weaver*, 744 F.3d at 146-47 (characterizing the challenged agency action); *Silverado Stages*, 823 F.3d at 1272-73 (noting that the plaintiff challenged FMCSA's failure to correct information in the MCMIS database used to calculate CSMS scores for inspection prioritization, but not the "validity or effectiveness" of the DataQs system available for challenging the inclusion of inaccurate data in the MCMIS database).

of the plaintiff's claims did not necessarily require the court to consider the validity of FMCSA's use of the CSMS system or other rules or regulations subject to the Hobbs Act.[16]  In this case, Plaintiff has not identified or sought review of specific safety violations that it believes should be removed from its record, but instead premises its challenge to the "high risk" safety rating on the validity of FMCSA's use of the CSMS system.  Accordingly, *Weaver* and *Silverado Stages* do not afford Plaintiff an escape from the application of the Hobbs Act.  *See Chhetri*, 823 F.3d at 586 (holding that the courts of appeals have exclusive jurisdiction over claims that "depend on establishing that all or part' of an administrative [rule,] regulation or order subject to the Hobbs Act is wrong as a matter of law or is otherwise invalid." (citations and internal quotation marks omitted)).

Accordingly, Plaintiff's challenge to its "high risk" safety rating and to the resultant risk of prioritization for investigation is due to be dismissed for lack of jurisdiction.[17]

---

[16] *See Weaver*, 744 F.3d at 147 (holding that the challenged action was not a rule or regulation); *Silverado Stages*, 823 F.3d at 1274 (holding that the plaintiff's "challenge to its safety violations" must . . . be brought initially" in the district court).

[17] The court has considered whether to transfer this case to the Court of Appeals pursuant to 28 U.S.C. § 1631, which allows for transfer "in the interest of justice" when a case is filed in the wrong court.  The "interest of justice" does not require transfer of Plaintiff's claims to the Court of Appeals for review under the Hobbs Act because Plaintiff did not file this action within 60 days of FMCSA's adoption of CSMS or within 60 days of assignment of the "high risk" safety rating. 28 U.S.C. § 2344 ("Any party aggrieved by [a final agency order subject to the Hobbs Act] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.").  *Cf. Alliance for Safe, Efficient, and Competitive Truck Transp. v. FMCSA*, 755 F.3d 946, 953-54 (D.C. Cir. 2014) (holding that a challenge to "the underlying methodology of" the CSMS system was time-barred by the Hobbs Act because it was not filed within 60 days of the

# IV.   CONCLUSION

Accordingly, it is ORDERED as follows:

1.     Defendants' motion to substitute their reply brief (Doc. # 42) is DENIED as moot.

2.     Plaintiff's motion for leave to file a rebuttal to Defendants' proposed reply brief (Doc. # 44) is DENIED as moot.

3.     Defendants' motion to dismiss (Doc. # 19) is GRANTED, and this case is DISMISSED without prejudice for lack of subject matter jurisdiction.

Final judgment will be issued separately.

DONE this 20th day of September, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

2010 adoption of the CSMS system).